*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1774
A14-1775**

Teri Ellis,
Relator,

vs.

Department of Employment and Economic Development,
Respondent.

**Filed July 20, 2015
Affirmed
Peterson, Judge**

Department of Employment and Economic Development
File No. 32743454-3

Ronald R. Bradley, Minneapolis, Minnesota (for relator)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent)

Considered and decided by Peterson, Presiding Judge; Ross, Judge; and Johnson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**PETERSON**, Judge

Relator challenges an unemployment-law judge's decision that she obtained unemployment benefits by fraud when she failed to report hours worked and earnings

from a part-time job. Relator asserts that the decision is arbitrary, capricious, and unsupported by evidence. We affirm.

## FACTS

Relator Teri Ellis was laid off from her employment with Accra Care on August 10, 2013, and applied for unemployment benefits on August 15, 2013. At the time she was laid off from Accra Care, Ellis also worked part time for the Anoka-Hennepin School District, earning $21.85 per hour as a crossing guard, and she continued to work for the school district after applying for benefits. On September 4, 2013, Ellis began working for Cross Media as a bookkeeper; this was also a part-time job and paid $33.00 per hour. Ellis underreported her earnings when filing for unemployment benefits. She received unemployment benefits until April 26, 2014, when respondent Department of Employment and Economic Development (DEED) terminated her benefits and began an overpayment and fraud investigation.

At an appeal hearing on the overpayment and fraud allegations, Ellis maintained that she was instructed by someone at DEED that she had to report her "new" hours with Cross Media and did not have to report her employment with the school district because it was not "new." Ellis testified that after receiving this instruction, she reported only income from Cross Media. But the amounts she reported did not always correspond with her gross wages from Cross Media. Ellis asserted that she asked DEED several times whether she needed to report income from both part-time jobs and was told that she only had to report new income. Ellis did not specify when these conversations took place or who had instructed her that she was not required to report some hours.

2

A person applying for unemployment benefits is given an "Information Handbook," which explains that an applicant "must report any hours worked and earnings from all work." Ellis admitted receiving the handbook and testified that she may have "perused" it. Ellis was required to fill out weekly request forms for unemployment benefits, which included the question, "For this reporting period, did you or will you receive or apply for income, from any other source, that you have not previously reported to us?" Ellis filled out these forms from September 1, 2013, to April 26, 2014, a total of 34 weeks. If Ellis had reported her income from the school district, she would have been ineligible for benefits during 30 of the 34 weeks.

Besides Ellis, the unemployment-law judge (ULJ) heard testimony from Linda Corey, a supervisor at the DEED call center. Corey explained that call-center representatives work with the handbook and are specifically trained to tell applicants that they "need to report all wages earned in that particular week." She had never heard of a call-center representative "mak[ing] a distinction between only reporting some hours from a job or only reporting some jobs in a week instead of all jobs or all hours." Corey said that the call-center staff knew that people who worked several jobs had to report earnings for every job they worked.

Ellis denied having any intent to defraud DEED and argued that she had been misled. The ULJ determined that Ellis had been overpaid and that she had obtained unemployment benefits by fraud, ordered Ellis to repay the overpayment, and assessed a fraud penalty. Ellis asked for reconsideration, and the ULJ affirmed his decision. Ellis appealed to this court by writ of certiorari.

3

## DECISION

We may affirm the ULJ's decision, or remand, reverse, or modify a decision if, among other things, the relator's substantial rights have been prejudiced because a decision is not supported by substantial evidence or is arbitrary or capricious. Minn. Stat. § 268.105, subd. 7(d)(5)-(6) (2014). We review "the ULJ's factual findings in the light most favorable to the decision." *Bangston v. Allina Med. Grp.*, 766 N.W.2d 328, 332 (Minn. App. 2009). Questions of law are subject to de novo review. *Builders Commonweath, Inc. v. Dep't of Emp't & Econ. Dev.*, 814 N.W.2d 49, 56 (Minn. App. 2012). "When the credibility of a witness testifying in a hearing has a significant effect on the outcome of a decision, the [ULJ] must set out the reason for crediting or discrediting that testimony." Minn. Stat. § 268.105, subd. 1a(a) (2014). This court defers to the ULJ's credibility determinations. *Bangston*, 766 N.W.2d at 332.

An applicant who receives unemployment benefits to which the applicant is not entitled must repay the amount of the overpayment. Minn. Stat. § 268.18, subd. 1(a) (2014). "Any applicant who receives unemployment benefits by knowingly misrepresenting, misstating, or failing to disclose any material fact, or who makes a false statement or representation without a good faith belief as to the correctness of the statement or representation, has committed fraud." Minn. Stat. § 268.18, subd. 2(a) (2014). An applicant who obtains unemployment benefits through fraud must repay the amount received and is subject to penalties. *Id.*

In *Cash v. Comm'r of Econ. Sec.*, the relator was found to have committed fraud and was disqualified from receiving benefits after he failed to report income for six

4

weeks when he filed for unemployment benefits. 352 N.W.2d 535, 536 (Minn. App. 1984). The relator claimed that he failed to report the income because of a "misunderstanding . . . caused by comments of a department employee." *Id.* A referee rejected the relator's claims, and the referee's decision was affirmed by a commissioner's representative. *Id.* On appeal, this court affirmed, concluding that the relator had committed fraud by knowingly and willfully[1] failing to disclose income. *Id.* at 537. This court stated that whether the relator intentionally misrepresented his earnings was a question of credibility that lay within the fact-finder's province. *Id.*; *see also Burnevik v. Dep't of Econ. Sec.*, 367 N.W.2d 681, 683 (Minn. App. 1985) (stating that determination whether claimant obtained benefits by fraud involves credibility of claimant's testimony).

The ULJ found that Ellis was given two copies of the information handbook, which contained specific instructions that a claimant must report "any hours worked and earnings from all work every week you request benefits." Based on Corey's testimony, the ULJ rejected relator's assertion that a DEED employee told her that she was required to report her wages from only one job. The ULJ found that "[t]he preponderance of the evidence shows that Ellis did not have a good faith belief as to the correctness of her answers when reporting her gross earnings." The ULJ found it not credible that Ellis could believe that she did not have to report all of her wages in light of the direct questions she had to answer in each weekly application for benefits. The ULJ further noted that Ellis failed to report any hours for two weeks that she worked at the employer

---

[1] Under current law, a claimant must be found to have acted "knowingly." Minn. Stat. § 268.18, subd. 2(a). This appears to be a less stringent standard than the former "knowingly and willfully."

5

for whom she was reporting hours and that she had no reasonable explanation for that. Finally, the ULJ found Corey's "detailed and specific testimony" credible.

Based on these credibility findings, the ULJ's conclusion that Ellis committed fraud and is ineligible for unemployment benefits because she knowingly misstated her income in order to obtain benefits is supported by substantial evidence and is not arbitrary or capricious.

**Affirmed.**